# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> FREE STATE MANAGEMENT GROUP, LLC, <br><br> Defendant. | CIVIL ACTION <br><br> NO. 20-197-KSM |

## MEMORANDUM

**MARSTON, J.** July 1, 2021

In this collective action lawsuit, Plaintiff Kevin Johnson, on behalf of himself and others similarly situated, alleges that Defendant Free State Management Group, LLC violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, when it improperly categorized individuals holding the title of "Construction Contractor" as independent contractors, rather than as employees.[1] (Doc. No. 1.) Specifically, Mr. Johnson alleged that his and others' misclassification meant that their hours were not properly tracked, and that as a result, they were not paid for all hours worked and were not paid overtime. (*Id.*) Presently before the Court are Mr. Johnson's Unopposed Motion for an Order Approving the Settlement Agreement and Granting a Service Award (Doc. No. 27) and his Unopposed Motion for an Order Awarding Attorneys' Fees and Reimbursement of Expenses (Doc. No. 28). For the reasons that are discussed below, the Court will grant both motions, with a reduced service award.

---

[1] In his Complaint, Mr. Johnson also alleged violations of the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. §§ 333.101 *et seq.*, on behalf of himself and a putative Rule 23 class of similarly situated people. (Doc. No. 1.) However, in exchange for Defendant's agreement not to contest conditional collective certification, Mr. Johnson and the opt-in Plaintiffs agreed not to pursue any PMWA claims in this matter on a class action basis. (*See* Doc. No. 15 at ¶¶ 16–17.)

I.     **FACTS AND PROCEDURAL HISTORY**

Mr. Johnson filed this action on January 10, 2020, alleging that he and others who worked for Free State as Construction Contractors were improperly classified as FLSA-exempt independent contractors and undercompensated as a result. (Doc. No. 1 at ¶¶ 33–34, 45–49.) Free State is a company that contracts with large venues, such as conferences, professional golf tournaments, or the Super Bowl, to construct large tents "that require a fair amount of construction knowledge and project management skills" to safely erect. (Hr'g Tr. at 8:4–20.) Free State uses the workers it titles as Construction Contractors to build these tents. (*Id.* at 8:21–9:19; *see also* Doc. No. 1 at ¶ 35.) Free State answered Mr. Johnson's Complaint on April 3, 2020 and explicitly denied misclassifying or underpaying its Construction Contractors. (Doc. No. 8 at ¶¶ 45–49.)[2]

Litigation proceeded apace. After the parties completed written discovery, they agreed that this matter should be conditionally certified as a collective action with respect to Mr. Johnson's FLSA claims. (Doc. No. 27-1 at p. 4; *see also* Doc. No. 15.) On September 21, 2020, the Court issued an Order conditionally certifying a collective comprising:

> All individuals who performed services for Free State Management Group, LLC as a Construction Contractor and/or Installer, were issued a Form 1099 in connection with those services, and received at least $600 in annual compensation, at any time between September 21, 2017 and [September 21, 2020] ("Putative Collective Members").

(Doc. No. 15 at ¶ 2.) In that Order, the Court also approved the parties' proposed notice, opt-in consent form, and text message notification. (*Id.* at ¶ 3.) Subsequently, twenty people opted into the lawsuit. (Doc. No. 17-1 at p. 4; *see* Doc. Nos. 17–23, 25.)

The parties participated in a settlement conference with Magistrate Judge Marilyn

---

[2] On February 27, 2020, this matter was reassigned from the Honorable Edward G. Smith to the Honorable Karen Spencer Marston. (Doc. No. 3.)

Heffley on January 20, 2021.  (Doc. No. 17 at p. 4.)  With Judge Heffley's assistance, the parties were able to reach a settlement agreement (*see id.* at pp. 4–5), which is described more fully below in Part II.  On April 7, 2021, Mr. Johnson filed his Unopposed Motion for an Order Approving the Settlement Agreement and Granting a Service Award (Doc. No. 27) and an Unopposed Motion for an Order Awarding Attorneys' Fees and Reimbursement of Expenses.  (Doc. No. 28.)  The Court held a hearing on both motions on May 10, 2021.  No opt-ins or objectors attended the hearing.

## II.     THE SETTLEMENT AGREEMENT

The parties' Settlement Agreement sets forth a "Settlement Class" that includes Mr. Johnson "and all Opt-In Plaintiffs . . . who previously joined th[e] lawsuit."  (Doc. No. 27-2 at p. 8.)  In other words, the Settlement Class includes Mr. Johnson and the other twenty people who opted into this action.  (*See id.  Compare id.* at p. 18 (list of Settlement Class members), *with* Doc. Nos. 17–23, 25 (opt-in consent forms).)

According to the terms of the Settlement Agreement, upon judicial approval, Free State will pay a total of $61,000.  (Doc. No. 27-2 at pp. 8, 11–12.)[3]  The $61,000 will be broken up and put to four different uses.  First, $22,793.25 will distributed to the Settlement Class members on a *pro rata* basis based on the number of uncompensated overtime hours they worked.  (*Id.* at pp. 8–9.)  Each member of the Settlement Class is entitled to a minimum $50 payment; if anyone's *pro rata* share is less than $50, then he or she will receive $50 and new *pro rata* shares will be calculated for the remaining Settlement Class members.  (*Id.* at p. 9.)  Second, Mr. Johnson will receive a $3,000 service award, in addition to his *pro rata* share of the settlement fund.  (*Id.* at p. 12.)  Third, $14,500 is earmarked to cover the costs of issuing notice to members

---

[3] The original settlement amount was $58,000, but Free State agreed to contribute an additional $3,000 to help defray higher-than-anticipated costs of settlement administration.  (*See id.*; Hr'g Tr. at 5:3–24.)

3

of the putative collective and of administering the settlement incurred by RG/2 Claims Administration LLC, Mr. Johnson's chosen claims administrator. (*Id.* at pp. 10–12.) Finally, $20,300 will go towards covering class counsel's fees, and $406.75 for the costs incurred by counsel. (*Id.* at p. 13; *see also* Doc. No. 28-1 at p. 5.)

All Settlement Class members will receive a check in the mail from RG/2 with their *pro rata* share of the settlement fund. (Doc. No. 27-2 at p. 13.) They have 90 days from the date their check is issued to redeem the payment; if they do not do so, the check becomes void. (*Id.*) The funds associated with any voided checks will be returned to Free State. (*Id.*)[4]

Although it agreed to settle this case, Free State does not concede liability, and continues to maintain that its employee classification and pay practices were lawful. (*Id.* at pp. 7–8, 15. *See generally* Doc. No. 8.) Pursuant to the Settlement Agreement, in exchange for receiving certain benefits, the Settlement Class members agree to release certain claims against Free State. Specifically, members of the Settlement Class agree to waive any claims that they have against Free State arising out of the FLSA or state wage and hour laws. (Doc. No. 27-2 at p. 14.) Additionally, in exchange for the service award, Mr. Johnson agrees to waive *any* claims he had against Free State, not just those arising out of alleged violations of wage and hour laws. (*Id.* at pp. 13–14.)

### III. FINAL CERTIFICATION OF THE FLSA COLLECTIVE

#### A. Legal Standard

The FLSA allows an employee alleging an FLSA violation to bring an action on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). This is known as a "collective action." Courts approve FLSA collectives in a two-step process. *See Zavala v. Wal*

---

[4] All members of the Settlement Class are bound by the Settlement Agreement's liability waiver, even if they do not cash their checks. (*Id.*)

4

*Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012); *Wright v. Lehigh Valley Hosp.*, Civil Action No. 10-431, 2010 WL 3363992, at *2 (E.D. Pa. Aug. 24, 2010). At the first stage, the court considers whether the collective should be conditionally certified for the purpose of providing notice to class members. *Halle v. W. Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). Since this Court conditionally certified the collective on September 15, 2020 (*see* Doc. No. 15), Mr. Johnson has already passed this hurdle.

Thus, this case is now at the second stage, known as "final certification." Here, the plaintiff bears the burden of establishing that the members of the proposed collective are "similarly situated" within the meaning of § 216(b). *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (3d Cir. 2017); *Halle*, 842 F.3d at 226; *Zavala*, 691 F.3d at 537. Courts consider a number of factors at this stage, including "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Zavala*, 691 F.3d at 536–37. The Third Circuit "endorses an ad hoc approach to this analysis, considering all relevant factors and making a determination on a case-by-case basis as to whether the named plaintiffs have satisfied this burden by a preponderance of the evidence." *Halle*, 842 F.3d at 226.

B. **Analysis**

Here, the Court finds that Mr. Johnson has carried his burden of showing that he is similarly situated with the other collective members within the meaning of § 216(b). As an initial matter, the Court notes that neither Free State nor potentially eligible members of the collective object to final certification, which weighs in favor of granting it. *See Keller v. TD Bank, N.A.*, Civil Action No. 12-5054, 2014 WL 5591033, at *9 (E.D. Pa. Nov. 4, 2014).

Additionally, an analysis of the factors identified in *Zavala* indicates that final certification is appropriate. Although the twenty opt-in plaintiffs worked at a variety of Free State's jobsites in eleven different states for different periods of time (*see* Doc. No. 27-1 at p. 8), they all held the same role: contractors constructing tents for Free State. As such, they all had similar salaries and circumstances of employment, particularly given that they were all classified as independent contractors. They all advance the identical claim that Free State misclassified them as independent contractors and, as a result, did not appropriately compensate them for their hours worked or overtime. Finally, they all seek the same form of relief: compensation for their unpaid wages and overtime.

For these reasons, the Court finds that the opt-ins are similarly situated to Mr. Johnson, and will grant final certification to the collective for purposes of this settlement.

## IV. FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

### A. Legal Standard

Courts considering whether to approve settlement of an FLSA action follow a three-step process. *See DiFlavis v. Choice Hotels Int'l, Inc.*, Civil Action No. 18-3914, 2020 WL 6728806, at *2 (E.D. Pa. Nov. 16, 2020). First, the court must determine whether "the settlement concerns a 'bona fide dispute.'" *Id.* (quoting *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016)). If it does, the Court next considers whether the settlement is "fair and reasonable for the employees." *Id.* (quoting *Howard*, 197 F. Supp. 3d at 777). Last, the Court considers whether the settlement "furthers the FLSA's implementation in the workplace." *Id.* (quoting *Howard*, 197 F. Supp. 3d at 777).

In determining whether there is a bona fide dispute between the employees and the employer, courts consider whether the dispute involves legal or factual issues, "such as FLSA

coverage or computation of back wages."[5] *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982); *see also Bettger v. Crossmark, Inc.*, Civil Action No. 1:13-CV-2030, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015) ("An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial."). A bona fide dispute exists when "the dispute . . . fall[s] within the contours of the FLSA and there [is] evidence of the defendant's intent to reject or actual rejection of th[e] claim when it is presented." *Kraus*, 155 F. Supp. 3d at 530.

Courts in the Third Circuit use the factors identified by the Third Circuit in *Girsh v. Jepson* to evaluate whether a Rule 23 class action settlement is fair and reasonable. *See DiFlavis*, 2020 WL 6728806, at *3; *In re Chickie's & Pete's Wage & Hour Litig.*, Civil Action No. 12-6820, 2014 WL 911718, at *2–3 (E.D. Pa. Mar. 7, 2014). *But see Kraus*, 155 F. Supp. 3d at 523 n.3 (observing that some of the *Girsh* factors do not apply in the context of FLSA settlements and that "though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying *Girsh* simply because it is the court's duty to assess whether the proposed agreement is fair and reasonable."). The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining the class action through the trial;

---

[5] This Court has previously noted that trial courts in the Third Circuit, relying on *Morris v. Penn Mutual Life Insurance Co.*, Civ. A. No. 87-7063, 1989 WL 14063, at *5 (E.D. Pa. Feb. 21, 1989), have held that a dispute is only bona fide if it involves factual, not legal, matters. *See Johnson v. City of Philadelphia*, Civil Action No. 19-4264, 2021 WL 1387504, at *4 n.8 (E.D. Pa. Apr. 13, 2021) (collecting cases). *Morris* dealt with whether a pre-litigation agreement could compromise a plaintiff's ability to bring suit under the FLSA. *Morris*, 1989 WL 14063, at *1. In that context, the court held that a plaintiff could waive her right to bring suit under the FLSA based on a factual dispute, but not based on a legal dispute. *Id.* at *5. The Court finds, as it did in its April 13, 2021 *Johnson* memorandum, that the *Morris* holding limiting "bona fide" settlements to those resolving factual disputes rather than legal ones does not apply to court-supervised FLSA settlements. *See Johnson*, 2021 WL 1387504, at *4 n.8.

7

(7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)) (cleaned up).

As for whether the settlement advances the purposes of the FLSA, courts consider whether the settlement agreement is narrowly tailored such that it resolves only the employees' wage and hour claims and whether the agreement contains a confidentiality clause that would frustrate the FLSA's "informational objective." *In re Chickie's*, 2014 WL 911718, at *3; *DiFlavio*, 2020 WL 6728806, at *7–8.

**B.     Analysis**

Here, the Settlement Agreement meets all the requirements for approval. First, the parties have a bona fide dispute, given the factual and legal issues in this matter. Specifically, Mr. Johnson maintains that he and the opt-ins were misclassified as independent contractors whereas Free State asserts that they were properly classified. (*E.g.*, Hr'g Tr. at 13:13–22.) Mr. Johnson "believe[s] that the economic realities of [the Construction Contractors'] situation and the control that was exerted . . . by [Free State] over the putative collective was sufficient to transform them into employees under the Fair Labor Standards Act," but recognizes that he might have difficulty proving this at trial. (*Id.*) For its part, Free State is steadfast in its position that the Construction Contractors were independent enough to be considered independent contractors and not subject to the FLSA's minimum wage and overtime requirements. (*See id.* at 8:21–9:19; Doc. No. 8 at ¶ 48.) Accordingly, because the parties dispute both the underlying facts and the legal import of those facts, the Court concludes that they have a bona fide dispute. *See Lynn's Food Stores*, 679 F.2d at 1354; *Sawyer v. Health Care Sols. at Home, Inc.*, No. 5:16-

cv-5674, 2019 WL 1558668, at *3 (E.D. Pa. Apr. 10, 2019).

Next, the Court finds that the Settlement Agreement is fair and reasonable. An analysis of the *Girsh* factors supports this conclusion. First, the Court agrees with Mr. Johnson's assertion that maintaining this action through trial would have been complex, expensive, and time-consuming. (Doc. No. 27-1 at pp. 8–9.) Had this matter not settled, Mr. Johnson would have wanted to depose several witnesses who work for Free State, and Free State would have wanted to depose most, if not all, of the twenty opt-in plaintiffs. (*Id.* at p. 8.) Additionally, although Free State stipulated to conditional certification, they would likely have contested final certification of the collective, leading to additional cost. (*Id.*) And, as discussed above, the parties vigorously dispute whether Mr. Johnson and the opt-ins were misclassified, making additional motions practice almost inevitable. (*See id.* at pp. 8–9.) Thus, this factor weighs in favor of finding that the settlement is reasonable.

Factor two, the reaction of the collective to the settlement, also weighs in favor of approval. As an initial matter, the Court notes that the opt-in rate—20 out of a putative class of 257 (*see* Hr'g Tr. at 3:17–19; Doc. No. 27-1 at p. 10 n.4)—is not stellar. However, Mr. Johnson's counsel provided a reasonable explanation for this low opt-in rate at the final approval hearing, asserting that "discovery . . . showed that a substantial portion of the potential Class actually only worked for the Defendant for a short period of time . . . and as a result of that, there may be some self-selection where individuals realized there wouldn't be very much to gain from joining this lawsuit." (Hr'g Tr. at 3:19–4:3.)[6] Moreover, while the opt-in rate indicates a

---

[6] Counsel also asserted that the low opt-in rate could be in part due to "COVID," and the fact that many of the former contractors work "at remote job sites scattered . . . across the country." (Hr'g Tr. at 4:3–11.) The Court raised its concern about whether members of the putative collective had properly received notice of this lawsuit, and counsel explained that in addition to notices being mailed to the last-known addresses, members of the putative collective also received follow-up text messages. (Doc. No. 27-1 at p. 11 n.4; Hr'g Tr. at 6:18–7:2.)

9

relatively tepid response to this lawsuit, it does not provide any information about the settlement, which was finalized after the deadline for people to opt in. And the opt-ins have certainly not raised any issues with the terms of the settlement, as none of them filed any objections to the Settlement Agreement or participated in the final approval hearing. Therefore, this factor weighs in favor of finding the settlement fair.

As to the third *Girsh* factor, although the proceedings in this case are still at a relatively early stage, the parties completed a substantial amount of written discovery, including reviewing payroll records for each of the twenty opt-in plaintiffs. (Doc. No. 27-1 at p. 11.) Additionally, the parties engaged in arms-length negotiations with the assistance of Judge Heffley, who is an experienced mediator. This extensive discovery, combined with the parties' structured settlement negotiations, weighs in favor of finding the settlement reasonable.

Turning to the risks posed by this case, the risk of establishing liability, the risk of establishing damages, and the risk of maintaining this collective action through trial all weigh in favor of finding that the settlement is reasonable. As discussed above, the parties disagree on whether Free State violated the FLSA, and it is not certain that Mr. Johnson would have been able to prove Free State's liability at trial. Even if he could, it would be difficult and expensive to prove damages for each plaintiff, particularly given the individualized defenses that Free State would have asserted as to each plaintiff, such as the defense that their timesheets do not accurately reflect the hours they worked. (*See id.* at p. 12.) On the facts before it, the Court finds that final approval of the collective for settlement purposes is merited. That said, there is a significant risk to the Settlement Class that if certification had been subject to vigorous opposition—as Mr. Johnson predicts it would have been (*see id.* at p. 13)—the Court could have reached a different conclusion. Accordingly, these factors weigh in favor of finding the

settlement reasonable, too.

The seventh *Girsh* factor, the ability of Free State to withstand a greater judgment, also weighs in favor of settlement approval. The parties have informed the Court that Free State is in a precarious financial situation as a result of the COVID-19 pandemic, which forced a halt in the high-capacity gatherings on which it relies for business. (Hr'g Tr. at 9:22–24; Doc. No. 27-1 at p. 14.) Indeed, the pandemic and the attendant lockdown orders appear to have driven Free State out of business. (Hr'g Tr. at 9:22–24; Doc. No. 27-1 at p. 14.) So, even if victorious at trial, the collective likely could not have made a substantially more significant recovery than they have already.

*Girsh* factors eight and nine require the Court to consider the reasonableness of the settlement in light of the best possible recovery the collective could have achieved and the attendant risks of litigation. These factors also weigh in favor of approval. Collective counsel estimated that the collective could have recovered, at most, $70,000 to $75,000 at trial. (Hr'g Tr. at 13:4–13.) Given this maximum possible recovery, the $22,793.25 which goes directly to the collective is reasonable, especially given Free State's relatively unstable financial position. And, as discussed with respect to factors four, five, and six, there is a substantial risk that Mr. Johnson would not have been able to successfully prosecute this collective action through trial. Given this risk, the recovery that class counsel was able to achieve through settlement means that these factors weigh in favor of finding the Settlement Agreement fair and reasonable.

Under the *Girsh* framework and the Court's independent assessment of the Settlement Agreement, which includes an assessment of the service award to Mr. Johnson and class counsel's attorney's fees and costs, discussed below in Parts V and VI, the Court concludes that the Settlement Agreement is fair and reasonable.

Finally, the Court considers whether the parties' Settlement Agreement furthers the purposes of the FLSA. It does. The Settlement Agreement only requires the Settlement Class to release their FLSA and state wage and hour claims against Free State based on the facts asserted in Mr. Johnson's Complaint. (Doc. No. 27-2 at p. 14.) Accordingly, the release is appropriately and narrowly tailored. *See Johnson*, 2021 WL 1387504, at *7; *DiFlavis*, 2020 WL 6728806, at *6 (collecting cases). Moreover, the Settlement Agreement contains no confidentiality provision (*see generally* Doc. No. 27-2 at pp. 7–18), so it does not "frustrate the purpose of the [FLSA] by restricting information," *DiFlavis*, 2020 WL 6728806, at *7, particularly because the Agreement—like all filings in this matter—is publicly available on the Court's docket, *see Wood v. Saroj & Manju Invs. Phila., LLC*, Civil Action No. 19-2820-KSM, 2021 WL 1945809, at *10 (E.D. Pa. May 14, 2021). Therefore, the Court finds that the parties' Settlement Agreement, which provides the Settlement Class with compensation for their allegedly unpaid hours and overtime, advances the purposes of the FLSA.

For these reasons, the parties' Settlement Agreement will be approved under the FLSA.

## V. APPROVAL OF A SERVICE AWARD TO MR. JOHNSON

The Court will also approve a service award to Mr. Johnson. Service payments are a common feature of class and collective action litigation. *See Sullivan*, 667 F.3d at 333 n.65. These payments serve "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of [the] litigation and to reward the public service of contributing to the enforcement of mandatory laws." *Id.* (cleaned up). While courts in other Circuits have looked dimly upon service awards or disallowed them entirely, *see Wood*, 2020 WL 7711409, at *5 n.8, "[t]here is substantial precedent from [the Third] Circuit supporting approval of incentive payments," *see Somogyi v. Freedom Mortg. Corp.*, Civil No. 17-6546,

(RMB/JS), 2020 WL 6146875, at *9 (D.N.J. Oct. 20, 2020) (collecting cases). We will not deviate from that precedent here. Nonetheless, because the service payment comes out of the common settlement fund, and not the portion of the fund devoted to attorneys' fees, the Court must "carefully review" the proposed payment for fairness to the other members of the class/collective. *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 770 (E.D. Pa. 2016) (quoting *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005)). Factors to consider in conducting this review include:

> [T]he risk to the plaintiff in commencing suit, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class.

*Ribstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 257 (E.D. Pa. 2011) (quoting *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005)).

The question, then, is whether the proposed $3,000 service payment to Mr. Johnson is fair and reasonable based on the collective's recovery and Mr. Johnson's contributions to that recovery. *See Johnson*, 2021 WL 1387504, at *7; *Altnor*, 197 F. Supp. 3d at 770. The Court recognizes that Mr. Johnson was "a substantial and necessary source of information" in the prosecution of this lawsuit. (Doc. No. 27-1 at p. 17.) He provided information and documents to collective counsel that were the original basis for this lawsuit, and he spoke in depth and at length with counsel regarding his experiences and job duties and Free State's policies and practices. (*Id.*) He participated in discovery, responding to both interrogatories and document requests from Free State. (Hr'g Tr. at 7:8–10.) Additionally, he assisted in recruiting other opt-ins to the suit, participated in the parties' settlement negotiations, and helped counsel evaluate the fairness of proposed settlement terms. (Doc. No. 27-1 at p. 17; Hr'g Tr. at 7:13–18.)

The incentive award to Mr. Johnson amounts to nearly 5% of the collective's total recovery in this matter, which is high relative to incentive awards in other FLSA cases. *See, e.g.*, *Travis v. Asociacion Puertorriquenos en Marcha, Inc.*, Civil Action No. 18-05015, 2020 WL 4059715, at *2 (E.D. Pa. July 20, 2020) (service award to single named plaintiff totaling 3.1% of the settlement amount); *Brown v. Progressions Behav. Health Servs., Inc.*, Civil Action No. 16-6054, 2017 WL 2986300, at *1 (E.D. Pa. July 13, 2017) (service awards to three named plaintiffs totaling 3.5% of the settlement amount); *Young v. Tri Cnty. Sec. Agency, Inc.*, Civil Action No. 13-5971, 2014 WL 1806881, at *8 (E.D. Pa. May 7, 2014) (service award to single named plaintiff totaling 3.5% of the settlement amount); *Mayer v. Driver Sols., Inc.*, No. 10-CV-1939 (JCJ), 2012 WL 3578856, at *5 (E.D. Pa. Aug. 17, 2012) (service award to single named plaintiff totaling 3.2% of the settlement amount).

If the parties' proposed service payment is disproportional to the benefit to the collective or the effort expended by the representative plaintiff, then courts have the power—and, indeed, the duty—to reduce it. *See, e.g.*, *Altnor*, 197 F. Supp. 3d at 772; *Rougvie v. Ascena Retail Grp.*. Civil Action No. 15-724, 2016 WL 4111320, at *36–37 (E.D. Pa. July 29, 2016); *Reibstein*, 761 F. Supp. 2d at 241; *see also Ruiz v. Act Fast Delivery of Colo., Inc.*, Civil Action No. 14-cv-00870-MSK-NYW, 2017 WL 11545275, at *4 (D. Colo. Jan. 9, 2017); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 422 (S.D.N.Y. 2014) (collecting cases). Such a reduction is appropriate in this case. Mr. Johnson's contributions to the litigation, while valuable, are the sort of "run-of-the-mill assistance" expected of a named plaintiff, not the "extensive involvement" required for a named plaintiff to earn a large incentive award. *Rougvie*, 2016 WL 4111320, at *36. This is especially true given that $3,000 is substantially more than other members of the collective will receive as part of the settlement. (*See* Doc. No. 27-2 at p. 20.)

After evaluating the total recovery amount and the contributions of Mr. Johnson, the Court finds that $2,135 service payment (3.5% of the settlement amount) is an appropriate and reasonable service payment in this case. The remaining $865 shall be distributed to the Settlement Class members on a *pro rata* basis. *See Altnor*, 197 F. Supp. 3d at 772 ("The difference between the requested amount and awarded amount will return to the total class distribution fund.").

For these reasons, the Court will approve the payment of a $2,135 service award to Mr. Johnson.

## VI.     APPROVAL OF CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS

### A.     Legal Standard

In the Third Circuit, courts generally favor using the percentage-of-recovery method to compensate counsel in wage-and-hour cases brought under the FLSA or state wage and hour laws as a collective or class action. *See Altnor*, 197 F. Supp. 3d at 765.[7] This is because the percentage-of-recovery method, as opposed to compensating attorneys for the number of hours they devote to a case, encourages efficiency and "rewards counsel for success and penalizes it for failure." *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) (quoting *In re Gen. Motors Corp.*, 55 F.3d at 821). In determining whether the requested fees are reasonable under the percentage-of-recovery method, the Court considers seven factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) awards in similar cases.

---

[7] "The percentage-of-recovery method . . . awards a fixed portion of the settlement fund to counsel." *Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 WL 4284116, at *11 (E.D. Pa. Sept. 27, 2017). While the terminology used in these cases is different, the percentage-of-recovery method should be familiar to attorneys; it is simply a contingency fee.

15

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

The Third Circuit has also recommended that courts using the percentage-of-recovery method perform a lodestar cross-check, which requires the court to compare the attorneys' recovery under the percentage-of-recovery method with the so-called "lodestar." *Id.* The lodestar is calculated by "multiplying the number of hours [the attorney] reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." *Id.*

**B.     Analysis**

Here, Mr. Johnson seeks $20,300 in attorneys' fees, roughly one third of the settlement fund, and $406.75 in litigation costs and expenses for collective counsel. (Doc. No. 28-1 at p. 5.) Beginning its analysis with the *Gunter* factors, the Court finds that factor one, the size of the settlement fund and the number of people benefitted by it, weighs in favor of approval. Generally, to avoid a windfall to counsel, as the size of a common fund increases, counsel's percentage of recovery should decrease. *See Fein*, 2017 WL 4284116, at *12. Here, where counsel's efforts have led to the recovery of $61,000 on behalf of a collective comprising 21 people, attorneys' fees of 33% are reasonable. Indeed, courts have approved similar percentages of recovery in wage and hour cases involving common funds of much larger size. *See id.* (allowing a 33% recovery of attorneys' fees from a settlement fund of $1,383,000); *Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 WL 4284114, at *9 (E.D. Pa. Sept. 27, 2017) (allowing a 35% recovery of attorneys' fees from a settlement fund of $775,000).

Second, there were no objections to the terms of the settlement or to the award of attorneys' fees from members of the collective, which weighs in favor of approval.

The third factor, the skill and efficiency of class counsel, also weighs in favor of

approval.  Class counsel is an experienced employment law attorney who, in his more than seven years of practice, has litigated roughly 100 wage and hour lawsuits arising under state and federal law.  (Doc. No. 28-2 at ¶¶ 5–7.)  As discussed above, counsel's efforts led to a significant recovery for the members of the collective while saving them the time, expense, and uncertainty of trial.  Because counsel prosecuted this matter with skill and efficiency, this factor weighs in favor of approval.

So too does the fourth factor, the complexity and the duration of the litigation.  Admittedly, this matter settled relatively early in the litigation, specifically during the discovery stage and little more than a year after the case was initiated.  However, collective counsel has devoted 67.67 hours to the prosecution of this case, a significant amount of time.  (*Id.* at ¶ 9.)  The claims involved were legally challenging given the debate surrounding whether Free State's classification practices were lawful under the FLSA.  And, the claims were factually complex, because they required an in-depth examination of Free State's pay records to determine the collective members' individual damages.  Accordingly, this factor weighs in favor of approval.

The fifth factor, the risk of non-payment, likewise favors approval.  As class counsel notes, he took this matter on a contingency basis, agreeing to only take a fee if he was successful.  (Doc. No. 28-1 at pp. 14–15.)  In any contingency case there is a risk of non-payment, and even more so in cases such as this one where the defendant has colorable defenses sounding in fact and law.  Here, the risk of non-payment is compounded given Free State's reportedly precarious financial situation.  (Hr'g Tr. at 9:22–24; Doc. No. 27-1 at p. 14.)  The fact that Free State is essentially out of business means that collective counsel took on an even greater risk than he first realized when he accepted this case:  Even if he succeeded, he may not have been able to recover any fees.

17

As alluded to above, factor six, the amount of time devoted to this matter by counsel, also weighs in favor of approving counsel's fee request. Collective counsel devoted 67.67 hours to the prosecution of this matter. (Doc. No. 28-2 at ¶ 9.) These reported hours are supported by his billing records, which indicate that he spent reasonable amounts of time on tasks associated with this case. (*See generally* Doc. No. 28-2 at pp. 6–13.) This is especially the case given the factual and legal complexity of this matter.

Finally, factor seven requires the Court to consider awards in similar cases. In the Third Circuit, courts using the percentage-of-recovery method to calculate attorneys' fees generally approve fees ranging "from roughly 20–45%." *Marby v. Hildebrandt*, Civil Action No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases). As mentioned above, courts have awarded attorneys' fees of around 33% of collective recovery in cases involving much larger funds, which entitle attorneys to a presumptively lower percentage fee. *See Fein*, 2017 WL 4284116, at *12; *Tompkins*, 2017 WL 4284114, at *9. Courts considering funds of a similar magnitude to the one here have granted attorneys' fees of 33%. *See, e.g.*, *Solkoff v. Penn St. Univ.*, 435 F. Supp. 3d 646, 658 (E.D. Pa. 2020); *Kauffman v. U-Haul Int'l, Inc.*, No. 5:16-cv-04580, 2019 WL 1785453, at *2 (E.D. Pa. Apr. 24, 2019). Accordingly, the Court finds that a comparison of collective counsel's requested fees in this case to awards in similar cases favors approval.

Having concluded that the *Gunter* factors all weigh in favor of approving collective counsel's requested fees in this case, the Court next performs a lodestar cross-check to confirm the reasonableness of that conclusion. The lodestar cross-check is an additional method used to determine whether class counsel's requested fees are reasonable—an opportunity that the Court

18

must take advantage of to fulfill its fiduciary duties to the members of the class/collective.[8]

Collective counsel reports that the 67.67 hours he expended on this matter, multiplied by his hourly rate of $290/hour, results in a lodestar of $19,624.30. (Doc. No. 28-2 at ¶¶ 7, 9.)

Based on this lodestar, the Court finds that the lodestar cross-check confirms the reasonableness of the award of attorneys' fees in this case. The lodestar "multiplier"—a measure of how much greater the percentage-of-recovery fee award is than the lodestar—is roughly 1.03, well within the range of appropriate multipliers identified by the Third Circuit. *See In re Prudential*, 148 F.3d at 341 (observing that multipliers of one to four are common in common fund cases). The lodestar cross-check therefore confirms the *Gunter* analysis: the requested attorneys' fees are reasonable.

The Court also finds that Mr. Johnson's request for $406.75 for costs expended by counsel is reasonable. The Court finds that these expenses, which reflect the $400 filing fee and $6.75 in courier fees (Doc. No. 28-2 at ¶ 10), were reasonably incurred in the prosecution of this matter.

For these reasons, the Court will approve a payment of $20,300 to collective counsel as attorneys' fees, and $406.75 as compensation for collective counsel's expenses.

## VII. CONCLUSION

For these reasons, the Court grants the motion for approval of the collective action settlement and the service award (with a modification to the service award) and approves Plaintiff's request for an award of attorneys' fees and reimbursement of expenses to class

---

[8] The Court notes that the *Altnor* court convincingly articulated reasons to be skeptical of attorneys who claim that their higher fees are justified by a lodestar cross-check, because there are ways for attorneys to manipulate the lodestar. *Altnor*, 197 F. Supp. 3d at 167–68. However, the Court finds that in this case, the lodestar cross-check is a useful tool. Whereas the *Altnor* court concluded that the high lodestar did not outweigh the analysis of the *Gunter* factors, which counseled against granting a high-percentage fee, here, the *Gunter* factors all weigh in favor of approving the requested fees.

counsel.

An appropriate Order follows.